PESOLA v PAWLOWSKI

OPINION OF THE COURT

1. INTOXICATING LIQUORS—DRAMSHOP ACT—DIRECTED VERDICT—EVIDENCE—DEGREE OF PROOF.

The elements of a cause of action under the dramshop act are: (1) the immediate tortfeasor was an intoxicated person; (2) defendants, or their agents, sold intoxicating liquors to the tortfeasor; (3) as a result of such sale, the tortfeasor continued in an intoxicated condition until the time of the accident; and (4) such intoxication was the cause or contributing cause of plaintiff's injury (MCLA 436.22).

2. INTOXICATING LIQUORS—DRAMSHOP ACT—ILLEGAL SALES.

A sale of liquor on Sunday is not the kind of "illegal sale" referred to in the dramshop act; the illegality is determined by the condition of the purchaser (MCLA 436.22).

CONCURRENCE BY O'HARA, J.

3. INTOXICATING LIQUORS—DRAMSHOP ACT—DIRECTED VERDICT—EVIDENCE—ILLEGAL SALES.

*Evidence of an unlawful sale of an alcoholic beverage to the claimed immediate tortfeasor together with the reasonable inferences therefrom in an action under the dramshop act was sufficient to raise a jury question, and a directed verdict for defendant under such circumstances was improperly granted (MCLA 436.22).*

Appeal from Wayne, James N. Canham, J. Submitted Division 1 December 12, 1972, at Detroit. (Docket No. 12650.) Decided March 26, 1973.

Complaint by Dalton Pesola against Stanley

REFERENCES FOR POINTS IN HEADNOTES
[1] 45 Am Jur 2d, Intoxicating Liquors § 20.
[2] 45 Am Jur 2d, Intoxicating Liquors § 279.
[3] 45 Am Jur 2d, Intoxicating Liquors § 400.

Pawlowski and Valentine F. Lobich for damages
under the dramshop act for injuries sustained in
an automobile accident. Directed verdict for de-
fendants. Plaintiff appeals. Reversed.

*Charfoos, Charfoos & Gruber,* for plaintiff.

*Sugar, Schwartz, Silver, Schwartz & Tyler,* for
defendants.

Before: QUINN, P. J., and V. J. BRENNAN and
O'HARA,* JJ.

V. J. BRENNAN, J. Plaintiff brought this action
for damages under the dramshop act (MCLA
436.22; MSA 18.993). At the close of the plaintiff's
proofs, the trial court granted defendants' motion
for a directed verdict; plaintiff appeals, and first
argues that the trial court erred by granting de-
fendants' motion for a directed verdict.

Since, in reviewing this question we must look
at the evidence in the light most favorable to the
plaintiff *(Shandor v Lischer,* 349 Mich 556 [1957]),
we have essentially borrowed the following state-
ment of facts from appellant's brief:

The plaintiff's testimony was that on Sunday,
January 5, 1969, he was a customer in defendants'
bar. Also present was one Howard Straub, who
had been there some time. Both plaintiff and
Howard Straub were regular customers of defend-
ants' bar. In plaintiff's presence, Straub consumed
at least two drinks of hard liquor which were
poured by defendants' waitress. The defendants'
license prohibited the sale of anything but beer or
wine on Sunday.

Howard Straub's wife, Mickey, was present for a

---

* Former Supreme Court Justice, sitting on the Court of Appeals by
assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

period of time in the bar; after a disagreement, Howard Straub and his wife left. Later Howard Straub returned alone. He ordered another drink, then he and plaintiff discussed going in Straub's car to another bar. They subsequently left together.

Some snow had fallen and there was a light layer of snow on the ground. On the way to the other bar, Straub deliberately "fishtailed" the car. Straub was demonstrating the technique for recovering from a skid to plaintiff, who was not a driver. They found the other bar closed and started back to defendants' bar. Straub fishtailed the car again and apparently the accelerator stuck. Straub was on the floor of the car apparently trying to free it when the car hit a pole, injuring Straub and severely injuring plaintiff. Both Straub and plaintiff were taken to Holy Cross Hospital.

Doctor Norman Arends, the physician at Holy Cross Hospital, testified that, upon admission, Mr. Straub produced no coherent answers and had a noticeable odor of alcohol on his breath. Jean Pearce, a nurse in the X-ray department, testified that she had made a notation at the hospital that Straub was "very drunk and wild". She couldn't take all of the requested X-rays because he was uncooperative.

On these facts, we conclude that the trial court erred by granting defendants' motion for a directed verdict. In order to establish a case under the dramshop act, the plaintiff must prove the following four elements: (1) the immediate tortfeasor was an intoxicated person; (2) defendants, or their agents, sold intoxicating liquors to the tortfeasor; (3) as a result of such sale, the tortfeasor continued in an intoxicated condition until the

time of the accident; and, (4) such intoxication was the cause or contributing cause of plaintiff's injury. *Long v Dudewicz,* 355 Mich 469 (1959).

We believe the plaintiff has raised a question of fact as to each of these elements. Regarding the first, a jury could infer the tortfeasor's intoxication from his actions: to wit, quarreling with his wife, irresponsible driving, and his uncooperative attitude at the hospital. There is direct testimony that the defendants furnished liquor to Mr. Straub. Regarding the third element, if the jury found he was drunk at the hospital, it must necessarily find that he was intoxicated while at defendants' bar. This is due to the close temporal proximity between the departure from the bar and the accident, and the fact that the tortfeasor had no access to any other intoxicating liquor during this interval. Finally, a jury could conclude that Mr. Straub's intoxicated condition contributed to his erratic driving.

While these proofs are definitely minimal, they are nevertheless sufficient to raise questions of fact regarding each element of plaintiff's cause of action; such questions of fact can only be resolved by the jury.

All of the authority to which the defendants refer in support of the trial court's decision are distinguishable. In each of the cases on which they rely, in which our Supreme Court upheld a directed verdict or a judgment notwithstanding the verdict on behalf of a dramshop-act defendant, the Court could point to the absence of proof on one of the four aforementioned elements.

In *O'Brien v Michigan Bonding & Surety Co,* 202 Mich 129 (1918), there was no testimony whatsoever that the tortfeasor ever imbibed at all. There was a total lack of proof as to decedent being

served any liquor by the defendant in *Nylund v
Gemo,* 295 Mich 75 (1940). In *Juckniess v Su-
pinger,* 323 Mich 566 (1949), there was no testi-
mony that a tortfeasor was drunk when leaving
defendant's bar, and furthermore there was an
intervening source of alcohol. There was no testi-
mony whatsoever that the tortfeasor was intoxi-
cated at any time in *Wyatt v Chosay,* 330 Mich
661 (1951). In *Long v Dudewicz, supra,* the trial
court was acting as a trier of fact and thus a
different issue was presented to the Supreme
Court. *Eisenzimmer v Contos,* 4 Mich App 651
(1966), which appellant relies on was, unfortu-
nately, reversed by our Supreme Court on this
precise issue. (See 379 Mich 656 [1967].)

Plaintiff's other argument is that defendants'
admitted illegal sale of alcohol to the tortfeasor on
Sunday is sufficient to bring this case within the
purview of the dramshop act without a showing of
the tortfeasor's contemporaneous intoxication. We
find the argument without merit. In *Maldonado v
Claud's Inc,* 347 Mich 395 (1956), our Supreme
Court read the bonding provision of the dramshop
act together with the provision establishing a
cause of action. The Court therein interpreted the
relevant statutory language as applicable to a sale
to a person to whom it was illegal to sell liquor;
this construction would foreclose plaintiff's inter-
pretation. That interpretation being that the
dramshop act applies to all illegal sales. Therefore,
a sale which is illegal due to its time or day does
not give rise to a cause of action under the dram-
shop act.

Reversed and remanded.

QUINN, P. J., concurred.

O'HARA, J. *(concurring in result).* I agree with
the result reached by Judge BRENNAN.

I do not, however, agree that the four numbered elements set forth in his opinion constitute the requirements to establish a cause of action under the dramshop act.

In the case at bar, I think there was ample testimony, together with the reasonable inferences therefrom, to establish that there had been an *unlawful* sale of an alcoholic beverage to the claimed immediate tortfeasor. This raises a submissible jury question under the concerned statute,[1] with, of course, proper instructions.

---

[1] MCLA 436.22; MSA 18.993.