**Manuel G. HERRERA, II, Third Party Plaintiff,**

v.

**L. J. W. VORIS, Individually and doing business as the Wheel Bar, Third Party Defendant.**

**Civ. A. No. 37230.**

United States District Court,
E. D. Michigan, S. D.

Nov. 2, 1973.

Edmund M. Brady, Jr., Detroit, Mich., for third party plaintiff.

David M. Tyler, Detroit, Mich., for third party defendant.

## OPINION AND ORDER DENYING MOTION TO DISMISS

KENNEDY, District Judge.

Following the issuance of the Court's Opinion and Order denying third party defendant's motion to dismiss, that defendant filed a Motion for Reconsideration on that portion of the motion relating to contribution. Additional briefs were filed and oral argument on this motion permitted.

The original plaintiffs in this action, David H. and Janice Gordon Frank, sued defendant and third party plaintiff Herrera for serious personal injuries caused by Herrera's negligent operation of an automobile while drunk. Shortly before the trial of that action, Herrera filed a third party complaint against the Wheel Bar, alleging that Wheel Bar caused his intoxication by its illegal sale of liquor to him and seeking from Wheel Bar, contribution toward payment of the Franks' claim or ultimate judgment against him. The Franks could have sued Wheel Bar as an additional defendant if they had chosen, but they did not choose to do so. Because the principal action had been set for trial before the third party complaint was filed and the third party defendant could not be ready for trial for several months, the Court tried the principal case on the scheduled trial date and a judgment was entered against Herrera after a jury verdict in favor of Dr. Frank. (Mrs. Frank's case was settled by the parties). Defendant Wheel Bar moved to dismiss the third party complaint on the ground that Her-

rera, the intoxicated driver, was not, under Michigan law, entitled to maintain an action for contribution against the bar, or dram shop, which caused his intoxication. The liability of a bar owner in Michigan, is controlled by the Michigan *Liquor Liability Act,* which is also frequently called the Dram Shop Act. Under that Act, the intoxicated person has no right of action, although others injured or damaged by reason of his intoxication may recover from a bar owner who has sold liquor to someone while that person is intoxicated or otherwise sold it in violation of law.

Wheel Bar asserts that this prohibition against the intoxicated person's own recovery also bars the action for contribution.

The right of a tort feasor to contribution from other tort feasors has had a rather cloudy development in Michigan. Until the Revised Judicature Act of 1961, and the adoption of the General Court Rules of 1963, the only right of a tort feasor to contribution from others who had contributed to or caused an injury or damage was in the case of a joint judgment between joint tort feasors. An insurer, however, who had paid more than it's insured's pro rata share of a judgment was entitled to contribution from judgment defendants who were jointly and severally liable. In all other cases the injured party who could decide which of the tort feasors he would sue and thus controlled from which he would collect. This situation is discussed at length by Justice Black in Moyses v. Spartan Asphalt, 383 Mich. 314, 174 N.W.2d 797, 1970. As he points out on page 327, 174 N.W.2d on page 802 of that opinion, "By § 1 thereof the act of 1941, P.A.1941, No. 303 (C.L.1948, § 691.561, et seq.) provided:

> . . . the substantive right of contribution *in favor of any joint tort-feasor who, having been sued by the plaintiff along with one or more other joint tortfeasors,* had paid the plaintiff more than his *pro rata* share of any judgment the plaintiff had re-

covered as against the defendants he had sued."

A tort feasor who was sued would be allowed an offset or reduction in his liability by reason of any sum paid by other tort feasors. (Whether this was to be done by the jury in its verdict or a reduction or credit on the verdict by the court has been an area of dispute). But if two persons were jointly responsible for a plaintiff's damages and plaintiff chose to sue only one, that one was liable for the whole of plaintiff's loss and had no right to contribution for the other tort feasor. He goes on to point out the same statute permitted plaintiff to settle with and discharge tort feasors without impairing their right to sue other tort feasors, whether joint or not. The same statutes provided that:

> " . . . an 'insurer of a person *jointly or severally liable* with one or more other persons upon a judgment for the same private wrong, which insurer has * * * discharged the common liability by payment, or has paid more * * *,' the same 'right to contribution which such insured would have acquired by such payment.' " [383 Mich. at 328, 174 N.W. 2d at 803].

The language giving the right to contribution by an *insurer* was thus broader than the right given to the defendant himself, since it refers to "insurer of a person *jointly* or *severally* liable."

Neither the General Court Rules of 1963, nor the Revised Judicature Act of the same year dealt explicitly with this problem of contribution except to adopt in Section 2925, almost verbatim the language of Act 303 of 1941, with the same inconsistency; i. e., insurers of a person jointly or severally liable were to have a right to contribution if they paid more than the insured's pro rata share, while defendant's rights to contribution existed only if there were *joint* tort feasors. Section 2925 also provides "Joint tort-feasors who are summoned in as third party defendants pursuant to court rule may likewise be liable for contribution." The Michigan General Court Rules of

1963, provided for third-party practice procedures in a form similar to the Federal Rules of Civil Procedure.

With this historical situation the Michigan Supreme Court dealt authoritatively with the problem of when and under what circumstances is there a right to contribution among tort feasors in the *Moyses* case, *supra.* The third-party defendant in that case was not a joint tort feasor. No judgment had yet been entered and no insurer had yet paid any sum.

Justice Black pointed out for the unanimous Michigan Supreme Court:

> The legal phrase "joint tortfeasor" was [under tort], and still is [understood to mean] that where two (or more) persons owe to another the same duty and by their common neglect of that duty such other is injured, the two (or more) have committed a joint tort and therefore are joint *tortfeasors.* (383 Mich. at 329, 174 N.W.2d at 803).

He further stated:

> When one speaks specifically of *joint tortfeasors*, he does not refer (a) to wrongdoers the liabilities of whom arise out of variant legal positions, the concurrently applied but legally different derelictions of whom make them *severally* responsible to the plaintiff in damages, or (b) to the acts or omissions of several who act independently rather than in concert, or (c) to those who may—under present rules of court—be joined as defendants, by the plaintiff (see GCR 1963, 206), and held responsible to him for damages sustained on account of their causally cooperating but nonjoint acts or omissions, say by the negligence of one, the violation of a statute like the dramshop act by another, and the breach by still another of an express or legally implied warranty. See the exhaustive opinion Judge Levin recently prepared for Duncan v. Beres (1968), 15 Mich.App. 318, 166 N.W.2d 678, and the exemplary cases of Virgilio v. Hartfield (1966), 4 Mich.App. 582, 145 N.W.2d 367, Boucher v. Thomsen (1950), 328 Mich. 312, 43 N.W.2d 866, Geib v. Slater (1948), 320 Mich. 316, 31 N.W. 2d 65 and Detroit, G. H. & M. R. Co. v. Boomer (1916), 194 Mich. 52, 160 N.W. 542.

*Moyses* held that Section 2925 could not be construed so as to permit contribution among tort feasors severally liable, and that since Spartan was not a joint tort feasor that neither the statutes, Section 2925, nor Rule 204 (third-party practice) created a substantive right to contribution. Having reached this conclusion the court went on to hold that it was overruling all earlier remnants of Michigan's common law rule which had barred "wrongdoers" from their equitable right of contribution. In doing so, the court held:

> Stimulated by the national advancement of principles set forth in the Uniform Contribution Among Tortfeasors Act, *supra,* the tendency of other courts to provide by judicial action the right of contribution on behalf of all but intentional wrongdoers, and the compelling admonitions of modern writers like Prosser, we have decided to overrule what is left of Michigan's common-law bar of contribution between or among "wrongdoers," wilful or intentional wrongdoers excepted. Such overrulement will leave the issue of contribution to equitable principles as known hitherto and now in matters of express or implied contract. In such regard see Lorimer v. Julius Knack Coal Co. (1929), 246 Mich. 214, 217, 224 N.W. 362, Comstock v. Potter (1916), 191 Mich. 629, 158 N.W. 102 and the exhaustive as well as up to date treatise of the law of contribution appearing in 18 Am.Jur.2d Contribution, §§ 1–63, pp. 6–95, particularly for the general rules, the prerequisites, the measure and extent of contribution, the apportionment and the application of the law of contribution to particular persons.

The court went on to quote with approval, Prosser on Torts, saying:

> There is obvious lack of sense and justice in a rule which permits the entire burden of a loss, for which two defendants were equally, unintentionally responsible, to be shouldered onto one alone, according to the accident of a successful levy of execution, the existence of liability insurance, the plaintiff's whim or spite, or his collusion with the other wrong-doer, while the latter goes scot free.

The Michigan Courts have not had occasion since this opinion in March of 1970, to apply the principles enunciated by the court there to contribution under the circumstances in the instant case. However, it is clear that the intoxicated Mr. Herrera is no more a willful or intentional wrongdoer than the bar owner who sold him the liquor, perhaps less so since it is the sale after he is intoxicated for which the bar is liable and at this time the intoxicated person may not know what he is doing. Surely there is no reason that the auto insurer should bear the entire loss and the bar's insurer go scot free because the plaintiff elected to sue one and not the other.

Third-party defendant urges that since Mr. Herrera could not sue the bar for his own injuries he should not be permitted to secure contribution from it toward payment of Mr. Frank's damage and that to permit him to do so permits him indirectly to benefit from his own wrongful act in becoming intoxicated. However, in many other instances, as well, a party seeking and receiving contribution would be barred from recovering his own damages because of his contributory negligence, etc.

The 1955 draft of the Commissioner's "Uniform State Laws Prefatory Note" (which is quoted with approval by the Michigan Supreme Court in *Moyses*) provides:

> This uniform act establishes the right of a person liable for damages for an unintentional wrong to compel others, who are liable with him for the same damages, to share in discharging the common liability.

Third-party defendant Wheel Bar was liable to Dr. Frank for the same damages for which Mr. Herrera was liable. The wrong was unintentional. Both should contribute to discharging the liability.

For the foregoing reasons, the Motion to Dismiss is denied.