FRIEND v CAMPBELL

Docket No. 49252. Submitted October 7, 1980, at Grand Rapids.—
    Decided December 3, 1980. Leave to appeal applied for.

Margie Friend, Georgina Friend, Michael Knight, and Michael A.
    Friend, administrator of the estates of Helen Friend and
    George Friend, brought an action against Alfred Jack Camp-
    bell, National Indemnity Company, and Wolverine Insurance
    Company for damages resulting from an automobile accident
    and against Edward Nasser, Marjorie Nasser and Sophie H.
    Bond under the dramshop act in the Iron Circuit Court. At
    trial, plaintiffs requested but were denied a jury instruction
    requiring the jury to apportion damages due the plaintiffs by
    Campbell and the bars involved according to their comparative
    fault. The court, V. Robert Payant, J., entered judgment on the
    jury verdict dismissing the cause of action against the Nassers
    and Sophie Bond with prejudice. Plaintiffs appeal. *Held:*

    Liability of a tavern owner for injuries to one who was
    injured by a person who was served alcoholic beverages by him
    in violation of the dramshop act is purely statutory and does
    not depend on proof of negligence or intentional wrongdoing.
    The elements of a cause of action under the dramshop act are:
    1) the immediate tortfeasor was an intoxicated person; 2)
    defendants, or their agents, sold intoxicating liquors to the
    tortfeasor; 3) as a result of such sale, the tortfeasor continued
    in an intoxicated condition until the time of the accident; and
    4) such intoxication was the cause or contributing cause of
    plaintiff's injury. A plaintiff is not entitled to an instruction
    which would require the jury to apportion damages on the
    basis of comparative fault where the defendants have a right to
    contribution because each defendant is responsible for an acci-
    dent which produced a single indivisible injury not apportiona-

REFERENCES FOR POINTS IN HEADNOTES

[1] 45 Am Jur 2d, Intoxicating Liquors §§ 566 *et seq.,* 582 *et seq.*
    Proof of causation of intoxication as a prerequisite to recovery
        under civil damage act. 64 ALR3d 882.
[2] 45 Am Jur 2d, Intoxicating Liquors §§ 561, 593.
[3] 45 Am Jur 2d, Intoxicating Liquors § 589.
    57 Am Jur 2d, Negligence § 447.

ble amongst the various defendants on any rational basis. Actions under the dramshop act are among such cases.

Affirmed.

1. INTOXICATING LIQUORS — DRAMSHOP ACT.

The elements of a cause of action under the dramshop act are: 1) the immediate tortfeasor was an intoxicated person; 2) defendants, or their agents, sold intoxicating liquors to the tortfeasor; 3) as a result of such sale, the tortfeasor continued in an intoxicated condition until the time of the accident; and 4) such intoxication was the cause or contributing cause of plaintiff's injury (MCL 436.22; MSA 18.993).

2. INTOXICATING LIQUORS — DRAMSHOP ACT — STATUTORY LIABILITY.

Liability of a tavern owner for injuries to one who was injured by a person who was served alcoholic beverages by him in violation of the dramshop act is purely statutory and does not depend on proof of negligence or intentional wrongdoing (MCL 436.22; MSA 18.993).

3. NEGLIGENCE — COMPARATIVE NEGLIGENCE — DRAMSHOP ACT.

A plaintiff is not entitled to an instruction which would require the jury to apportion damages on the basis of comparative fault where the defendants have a right to contribution among themselves because each defendant is responsible for an accident which produced a single indivisible injury not apportionable amongst the various defendants on any rational basis; actions under the dramshop act are among such cases.

*Kendricks, Bordeau, Casselman, Adamini, Keefe & Smith,* for plaintiffs.

*Wisti & Jaaskelainen* (by *Michael E. Makinen),* for defendants Nasser.

*Petrucelli & Petrucelli,* for defendant Bond.

Before: J. H. GILLIS, P.J., and BASHARA and CYNAR, JJ.

J. H. GILLIS, P.J. In this case, plaintiffs sued the defendants for damages resulting from a collision between plaintiffs' vehicle and a vehicle driven by defendant Alfred Jack Campbell. The appellees

were sued under the dramshop act, MCL 436.22;
MSA 18.993, because they allegedly sold intoxicat-
ing liquor to Campbell at a time when he was
already intoxicated and the sales were a proximate
cause of the plaintiffs' injuries. At trial, the jury
returned a verdict of no cause of action against the
dramshop defendants[1] and plaintiffs appeal as of
right.

At trial, plaintiffs requested but were denied[2] an
instruction which would have required the jury to
apportion damages due the plaintiffs by Campbell
and the two bars according to their comparative
fault. The concept of comparative fault was es-
poused by plaintiffs as analogous to the doctrine of
comparative negligence first adopted in Michigan
in *Placek v City of Sterling Heights,* 405 Mich 638;
275 NW2d 511 (1979). Plaintiffs now assert that
the refusal to give the instruction was reversible
error.[3]

---

[1] By the time the case went to the jury, the judge had directed a
verdict against defendant Campbell and against the plaintiffs as to
their allegations of negligence on the part of the dramshop defen-
dants.

[2] It is alleged on appeal that plaintiffs did not preserve this issue
because they failed to object to the failure to give the instruction. We
disagree. Plaintiffs' attorney requested the instruction on the second
day of trial and made a record of his reasons for doing so after the
judge denied the request. While the attorney did not specifically take
exception to the court's ruling, his statements clearly reflected his
disagreement therewith. No further statement was necessary to com-
ply with the policy underlying GCR 1963, 516.2.

[3] The jury's verdict of no cause of action on the dramshop allega-
tions might well be relied upon as determinative of the issue pre-
sented by plaintiffs. Only if error resulting from the refusal to give an
instruction might have altered the result, "or is one without which
this Court can say the result might well have been different, [is] the
error * * * reversible"'. *Richman v City of Berkley,* 84 Mich App 258,
264; 269 NW2d 555 (1978), *lv den* 405 Mich 804 (1979). Because the
jury found no cause of action, it might be inferred that an instruction
as to the apportionment of damages would not have changed the
result; the jury's verdict implies that it never reached the question of
damages. However, plaintiffs' attorney argued in his motion for new
trial, without contradiction, that the jury returned to the courtroom
after it had first retired to deliberate, and "asked how to apportion

Under the dramshop act, MCL 436.22; MSA 18.993, an injured person has a statutory cause of action against anyone who unlawfully sells intoxicating liquor to a visibly intoxicated person and the sale is a proximate cause of the injury or death. Four elements must be proven in such a case: "(1) the immediate tortfeasor was an intoxicated person; (2) defendants, or their agents, sold intoxicating liquors to the tortfeasor; (3) as a result of such sale, the tortfeasor continued in an intoxicated condition until the time of the accident; and, (4) such intoxication was the cause or contributing cause of plaintiff's injury." *Pesola v Pawlowski,* 45 Mich App 516, 518-519; 206 NW2d 780 (1973).

The proofs in a dramshop case do not depend upon the defendant's fault. "[T]he basis of liability asserted against defendant tavern owners is purely statutory and does not depend on proof of intentional wrongdoing or negligence. However careful a tavern owner may be, if he makes an unlawful sale that contributes to plaintiff's injury he is fully liable therefor." *Duncan v Beres,* 15 Mich App 318, 331; 166 NW2d 678 (1968).

Before 1970, as between a defendant driver and a dramshop defendant, the latter had no right of contribution from the former (and, apparently, vice versa); contribution existed between joint tortfeasors because their liability was premised on a common theory. The dramshop defendant's liability was (and is) statutory; the driver's liability was (and is) grounded in negligence. *Virgilio v Hartfield,* 4 Mich App 582, 585; 145 NW2d 367 (1966). As between two or more dramshop defendants, the right of contribution was found to exist, precisely

liability between the defendants". This question was not asked on the record, apparently, but plaintiffs' reference to it raises enough of a possibility that the jury was interested in apportioning damages as to require our consideration of the presented issue.

because their equities were (and are) equal: they "are under a common burden, obligation or liability to the plaintiff, statutorily or otherwise imposed or assumed". *Duncan v Beres,* 15 Mich App 318, 323.

In 1970, the Michigan Supreme Court issued an opinion which seemingly abrogated the rule that no right of contribution existed between one or more dramshop defendants and the intoxicated driver. *Moyses v Spartan Asphalt Paving Co,* 383 Mich 314; 174 NW2d 797 (1970). In its stead was placed the concept that:

"If the jury believed that both original defendants and the third-party defendants were responsible for the injuries to the plaintiff, then a basis for allowing contribution would exist. All of the defendants would share a common liability to the plaintiff because the type of injuries suffered by the plaintiff are not apportionable amongst the various defendants on any rational basis. Where two or more individuals are responsible for an accident which produced a single indivisible injury, each individual wrongdoer may be held liable for the entire amount of the damages and thus each of the defendants shares a common liability with the others that are also responsible for the injury." *Caldwell v Fox,* 394 Mich 401, 420, fn 5; 231 NW2d 46 (1975), citing *Moyses,* 383 Mich 314, 330.

*Moyses* was subsequently cited in *Herrera v Voris,* 365 F Supp 744, 745-747 (ED Mich, 1973), aff'd sub nom, *Frank v Voris,* 503 F2d 1023 (CA 6, 1974), for the proposition that a driver defendant may seek contribution from the tavern which he claimed illegally sold the liquor to him. The Sixth Circuit specifically stated that *Moyses* superseded *Virgilio v Hartfield, supra,* on this issue. 503 F2d 1023, 1024-1025.

No Michigan cases were found which specifically

apply *Moyses* in the context of a dramshop case. But see, *Putney v Gibson,* 94 Mich App 466, 479-481, 486; 289 NW2d 837 (1970), *lv gtd* 408 Mich 897 (1980), where another panel of this Court recently stated that a dramshop defendant cannot require contribution from the intoxicated driver defendant. This statement was made on the basis of *Duncan v Beres, supra,* and *Virgilio v Hartfield, supra.* Neither *Moyses, supra,* nor *Herrera v Voris, supra,* were referred to in the opinion.

While Michigan law still provides that neither the intoxicated driver nor the dramshop defendants may seek contribution from the other for damages assessed in a dramshop case, *Putney v Gibson, supra,* even if we were to follow the Federal courts' interpretation of *Moyses, supra,* the instant plaintiffs' position would not be enhanced. As noted by the Court in *Caldwell,* the right to contribution as enunciated in *Moyses* exists because each defendant, regardless of the theory on which he is sued, is responsible for an accident which produced a "single indivisible injury", an injury which is "not apportionable amongst the various defendants on any rational basis". 394 Mich 401, 420, fn 5. The logical extension of the foregoing statement is that, where the right to contribution is founded on such a rationale, the plaintiff is not entitled to an instruction which would require the jury to apportion damages on the basis of comparative fault.

Our conclusion is further strengthened by the recognition that fault is not an issue in dramshop cases,[4] *Duncan v Beres, supra,* and that contribu-

---

[4] If the scenario created by the interrelationship of dramshop defendants, a driver/defendant, and an accident, is carefully scrutinized, it is clear that there is no measure by which to comparatively apportion a dramshop defendant's financial liability to the plaintiff once the concept of fault is removed from the equation. Thereafter,

tion is, by statute, effected on a pro rata basis. MCL 600.2925a; MSA 27A.2925(1). See, in this regard, *Sexton v American Aggregates,* 60 Mich App 524, 537; 231 NW2d 449 (1975), where another panel of this Court noted that the statutory provision for pro rata contribution between joint tortfeasors "would seem to preclude our adoption of the 'relative fault' theory" espoused by the defendant therein.

The specific question presented by plaintiffs is obviously one of first impression in Michigan. In a related area of the law, however, this Court recently held that "[t]he doctrine of comparative negligence does not mandate abandonment of joint and several liability". *Weeks v Feltner,* 99 Mich App 392; 297 NW2d 678 (1980). In *Weeks,* plaintiff alleged that injuries she sustained in a sexual assault in her apartment were proximately caused by the negligence of the owners of the apartment complex and the realty company which managed the complex. Defendants requested but were denied a jury instruction which would have required an apportionment of the damages between the defendants. The Court rejected defendants' argument that "comparative negligence requires that a defendant only be liable to the extent of his own wrongdoing, not only in relation to the plaintiff, but in relation to other defendants as well". 99 Mich App at 395. Rather, the Court ruled that the doctrine of comparative negligence is primarily directed at insuring "fair and adequate compensation for injured plaintiffs". *Id.* Because the acts of

the only quantifier is the amount of intoxicating liquor sold to the intoxicated purchaser. Such a "yardstick" still raises the specter of fault, however, unless one posits that the functionally "strict" liability imposed on dramshop defendants becomes more "strict" or less "strict" depending on how many times the dramshop defendant sells the intoxicated person a drink. No Michigan case has yet adopted such a rationale; we will not do so now.

the person who assaulted plaintiff were foreseeable by the other defendants and "there is nothing inherently inequitable in holding them liable for the resulting injury", *id.,* the Court refused to abandon the theory of joint and several liability in favor of comparative negligence.

In dramshop causes of action, the acts of the intoxicated defendant driver are likewise reasonably foreseeable by the dramshop defendants. Indeed, that is why they are statutorily liable for any injury proximately caused by the sale of intoxicating liquors. Michigan law being well settled that each dramshop defendant is fully liable to the plaintiff for the injury caused, although each may seek pro rata contribution from any other dramshop defendant against whom the jury returns a verdict, it is clear that the policy considerations favor the plaintiff in such cases, who has a better chance of recovering full damages if joint and several liability is imposed. We are loathe to weaken plaintiffs' possibility of full recovery by now replacing joint and several liability with comparative fault, especially where the plaintiffs' negligence is not an issue. *Genesee Merchants Bank & Trust Co v Bourrie,* 375 Mich 383, 389-390; 134 NW2d 713 (1965), *James v Dixon,* 95 Mich App 527, 534; 291 NW2d 106 (1980).

For the above reasons, we have concluded that the trial court did not err in refusing to give the instruction requested by plaintiffs. In dramshop actions, there is no need to apply the concept of comparative fault.

Affirmed.